## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ANGELA W. DEBOSE,

     Plaintiff,

v.                                                                    Case No: 8:15-cv-2787-T-17AEP

UNIVERSITY OF SOUTH FLORIDA,
UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, and ELLUCIAN
COMPANY, L.P.,

     Defendants.

_____

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANTS' MOTIONS TO DISMISS

This cause came before the Court pursuant to the *Defendant University of South Florida Board of Trustees' Motion to Dismiss and to Strike* (Doc. No. 17) (the "**USF Motion**") filed by Defendant, University of South Florida Board of Trustees ("**USFBOT**") and the *Defendant Ellucian Company L.P.'s Motion to Dismiss Plaintiff's Amended Complaint* (Doc. No. 20) (the "**Ellucian Motion**", and together with the USF Motion, the "**Motions**") filed by Defendant, Ellucian Company L.P. ("**Ellucian**", and together with USFBOT, the "**Defendants**"), along with the responses thereto (Doc. Nos. 21 & 22) filed by the Plaintiff, Angela W. DeBose (the "**Plaintiff**" or "**DeBose**").  For the reasons set forth below, the Motions are **GRANTED IN PART AND DENIED IN PART**.

## I.   Background

### A.   Procedural Background

The Plaintiff commenced this case by filing a complaint against the Defendants on December 4, 2015 (Doc. No. 1).  The Plaintiff filed an *Amended Complaint* (Doc. No. 5) (the "**FAC**") on December 11, 2015.

The FAC contains the following causes of action: Count I – Race Discrimination under 42 U.S.C. § 1981 (against USFBOT); Count II – Retaliation under 42 U.S.C. § 1981 (against USFBOT); Count III – Conspiracy under 42 U.S.C. §§ 1985 & 1986 (against both Defendants); Count IV – Defamation by Travis Thompson (against USFBOT); Count V – Defamation by Bob Sullins (against USFBOT); Count VI – Negligent Hiring, Supervision, and Retention (against USFBOT); Count VII – Negligence and Gross Negligence by Bob Sullins (against USFBOT); Count VIII – Tortious Interference (against Ellucian); Count IX – Negligent Supervision of Andrea Diamond (against both Defendants); Count X – Breach of Contract (against USFBOT); Count XI – Promissory Estoppel (against USFBOT); Count XII – Equitable Estoppel (against USFBOT); Count XIII – Negligent Misrepresentation, Concealment, and Fraud (against USFBOT); Count XIV – Negligence and Gross Negligence (against both Defendants); Count XV – Civil Conspiracy (against both Defendants); Count XVI – Tortious Interference (against USFBOT); Count XVII – Defamation by Ralph Wilcox (against USFBOT); Count XVIII – Intentional Infliction of Emotional Distress (against USFBOT); Count XIX – Vicarious Liability (against both Defendants); Count XX – Spoliation (against USFBOT).

On December 31, 2015, USFBOT filed the USF Motion, seeking dismissal of the FAC for failure to state a claim.  In addition, USFBOT requests that the Court strike the Plaintiff's requests for punitive and exemplary damages.  On February 3, 2016, Ellucian

filed the Ellucian Motion, seeking dismissal of the FAC due to insufficient service of process, and for failure to state a claim. The Plaintiff filed her response to the Ellucian Motion on February 17, 2016 (Doc. No. 21), and responded to the USF Motion on February 18, 2016 (Doc. No. 22). On March 15, 2016, the Plaintiff filed a copy of a tolling agreement pertaining to any Title VII claims the Plaintiff may bring against USFBOT.

### B.    Factual Background

The Plaintiff alleges that she was hired by USFBOT in 1988, and ultimately promoted to the position of University Registrar in October, 1996 (FAC, at ¶ 18). The Plaintiff alleges that during 2014 she began experiencing difficulties with USFBOT employees Travis Thompson, Bob Sullins, Paul Dosal, and Ralph Wilcox (FAC, at ¶¶ 27-31). The Plaintiff alleges that between June and July, 2014, her relationship with Dosal and Thompson worsened, and that she was subjected to racially motivated and hostile behavior. (FAC, at ¶¶ 51-54).

On July 15, 2014, the Plaintiff alleges that Dosal advised her that another employee, Billie Jo Hamilton, would be promoted to the position of Assistant Vice President of Enrollment Management. (FAC, at ¶¶ 55-58). The Plaintiff complained to Dosal that she had been overlooked as a potential applicant for the position. (FAC, at ¶ 59). The Plaintiff alleges that Dosal verbally offered to extend DeBose's employment as University Registrar through 2019 if DeBose stopped pressing him with questions about Hamilton's promotion and congratulated Hamilton on the promotion. (FAC, at ¶ 62). DeBose claims she accepted Dosal's offer, and congratulated Hamilton for her promotion. (FAC, at ¶ 63).

On July 28, 2014, the Plaintiff filed an ethics complaint with USFBOT based on misconduct allegedly perpetrated by Travis Thompson. (FAC, at ¶ 65). The Plaintiff

further alleges that she complained to USFBOT that Sullins and Dosal had failed to appropriately supervise Thompson. (FAC, at ¶ 66). On August 26, 2014, the Plaintiff filed charges of discrimination against Dosal with USFBOT. (FAC, at ¶ 68). Following those actions, DeBose claims that her working environment at USFBOT became increasingly hostile. (FAC, at ¶ 69).

In December, 2014, DeBose claims she filed a charge of discrimination with the EEOC. (FAC, at ¶ 70). Thereafter, on February 4, 2015, the Plaintiff filed a miscellaneous proceeding in this Court, seeking a temporary restraining order and preliminary injunction to prevent USFBOT from terminating her employment, Case No. 8:15-mc-18-T17 (the "**Injunctive Action**") (FAC, at ¶ 71). The Plaintiff alleges that USFBOT further reprimanded her for filing the Injunctive Action and, as a result, she added a charge of retaliation to her EEOC complaint. (FAC, at ¶¶ 73-74).

In April, 2015, the Plaintiff alleges that she was asked to meet with representatives from Ellucian to discuss a computer software system called Degree Works. (FAC, at ¶ 78). The Plaintiff alleges that the meeting was a "set up" to create grounds to terminate her employment. (FAC, at ¶ 79). On May 11, 2015, the Plaintiff alleges that she was provided with a copy of a report by Ellucian (the "**Ellucian Report**") regarding the Degree Works program. (FAC, at ¶ 87). According to the Plaintiff, the Ellucian Report was critical of DeBose, stating that her office posed a "high risk" and was "not willing to encompass change." (FAC, at ¶ 91). DeBose disagreed with the conclusions in the Ellucian Report. (FAC, at ¶ 97).

On May 19, 2015, DeBose attended a meeting with USFBOT representatives, at which she was given a termination letter. (FAC, at ¶ 104). Despite the fact that she was

under contract through June 30, 2015, the Plaintiff alleges that she was asked to leave the campus immediately and was required to exhaust her professional and vacation leave beginning May 19, 2015. (FAC, at ¶ 112).  The effective date of the Plaintiff's termination was August 19, 2015. (FAC, at ¶ 113).

Following her termination, DeBose alleges that she was offered a job by the University of North Florida. (FAC, at ¶ 120).  On May 26, 2015, the Plaintiff alleges that Ralph Wilcox called a colleague at the University of North Florida and "poisoned the well" by calling DeBose "awful" and "uncollaborative." (FAC, at ¶ 123).  On May 27, 2015, the Plaintiff alleges that the University of North Florida rescinded her offer of employment. (FAC, at ¶ 124).

## II.    Legal Analysis

In the Motions, the Defendants seek dismissal of the FAC due to improper service of process and for failure to state a claim.  In addition, in the USF Motion, USFBOT asks the Court to strike the Plaintiff's claims for punitive damages.  The parties' arguments are addressed in detail below.

### A.    Insufficient Service of Process (Ellucian)

As an initial matter, the Court must determine whether the Plaintiff has properly served the FAC on Ellucian.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Rajbhandari v. U.S. Bank*, 305 F.R.D. 689, 693 (S.D. Fla. 2015).  "A process server's return of service is presumed to be valid and satisfies a plaintiff's initial prima facie burden absent strong and convincing evidence presented to the contrary." *Id.* at 393-94.  At that point, "[t]he burden then shifts to [the] Defendant to refute, by strong and convincing evidence that service was not properly effectuated." *Bodyup Fitness, LLC v. 2080039*

*Ontario, Inc.*, 2008 WL 516996, at \*4 (S.D. Fla. Feb. 23, 2008). "Such evidence must be factual and specific enough to 'set forth circumstances . . . which would call into question the issue of service.'" *Id.*

Here, Ellucian disputes that it was served with a complete copy of the FAC and summons. The Plaintiff, for her part, disagrees, and contends that service was proper. Both parties have submitted affidavits in support of their respective positions. Faced with competing evidence regarding whether service was properly effectuated, the Court essentially has two options: (1) conduct a hearing to determine whether the Plaintiff's service was effective; or (2) provide the parties with an opportunity to resolve the issue amicably. As set forth below, the Court will be dismissing various counts of the FAC for failure to state a claim, and will be granting the Plaintiff leave to file a second amended complaint. Given those facts, the Court believes the most effective use of the parties' resources is the latter option. This conclusion is particularly appropriate given the recent amendments to the Federal Rules of Civil Procedure, which now impose a duty on both the Court *and the parties* to construe, administer, and employ the Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See* <u>Fed. R. Civ. P.</u> 1. In light of the foregoing, the Ellucian Motion will be denied without prejudice as to the issue of service of process.

### B. Failure to State a Claim (both Defendants)

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, as opposed to well-pled factual

allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts apply a two-pronged approach when considering a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id.* A court must then take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. *Id.* at 1289. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

      1.      *Counts I-III, IV – VII, X-XI, XIII-XIV, XVII-XVIII, and XX: Sovereign Immunity (USFBOT)*

USFBOT seeks dismissal of Counts I-III, IV-VII, X-XI, XIII-XIV, XVII-XVIII, and XX based on principles of sovereign immunity. Since the sovereign immunity analysis differs depending on the particular claims at issue, the Plaintiff's claims have been subdivided into the following categories: (i) Counts I-III, which constitute constitutional tort claims under 42 U.S.C. §§ 1981, 1985, & 1986; (ii) Counts IV-VII, XIII-XIV, XVII-XVIII, and XX, which consist of claims in which USFBOT argues that the Plaintiff has pled that its employees acted with malice; and (iii) Counts X and XI, in which the Plaintiff asserts claims for breach of contract and for promissory estoppel.

### a.    Counts I-III: Constitutional Tort Claims.

"Absent a legitimate abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by any individual against a state or its agencies in federal court." *Gamble v. Fla. Dept. of Health & Rehab. Servs.*, 779 F.2d 1509, 1511 (11th Cir. 1986).  There are only two ways in which Eleventh Amendment immunity can be overcome.  "First, Congress may abrogate the state's immunity by explicit Congressional enactment through its legislative powers granted to it by the states in § 5 of the Fourteenth Amendment." *Id.* at 1512.  "Second, the state itself may waive its Eleventh Amendment immunity and, thereby, consent to suit in federal court." *Id.*

In the USF Motion, USFBOT seeks dismissal of Counts I – III based on principles of Eleventh Amendment immunity.  In support, USFBOT argues that it is an agency of the state subject to the protections of the Eleventh Amendment, and that neither of the methods for overcoming sovereign immunity apply to Counts I – III.  Specifically, USFBOT points out that "University boards of trustees [constitute] corporations primarily acting as instrumentalities or agencies of the state . . . for purposes of sovereign immunity" and, as a result that USFBOT is "an agency or instrumentality of the State of Florida for Eleventh Amendment purposes." *See Schultz v. Bd. of Trustees of Univ. of W. Fla.*, 2007 WL 1490714, at *3 (N.D. Fla. May 21, 2007).  In addition, USFBOT cites authorities indicating that Congress' enactment of 42 U.S.C. §§ 1981, 1983, 1985, & 1986 did not abrogate the states' Eleventh Amendment immunity, *see Gamble*, 779 F.2d at 1512; *Cuyler v. Scriven*, 2011 WL 861709, at *3 (M.D. Fla. Mar. 9, 2011), and that Florida's waiver of sovereign immunity found in Section 768.28 of the Florida Statutes is "limited to traditional torts,"

and does extend to "constitutional torts" under 42 U.S.C. §§ 1981, 1983, 1985, & 1986. *Gamble*, 779 F.2d at 1515.

The Plaintiff responds by citing *Travelers Indemnity Co. v. Sch. Bd. of Dade Cty.*, 666 F.2d 505 (11th Cir. 1982) for the proposition that USFBOT is not an agency or instrumentality of the state, and *Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701 (1989) for the proposition that plaintiffs may bring Section 1981 and 1983 claims against state employers. Neither authority stands for the propositions cited by the Plaintiff. As an initial matter, neither *Jett* nor *Travelers* involved a state university board of trustees, as the defendants in those cases were a municipal school district and a county school board. Moreover, the *Jett* case did not even address Eleventh Amendment immunity, and *Travelers* dealt with the separate issue of whether the Eleventh Amendment protects county school boards, as opposed to state agencies, from suit. *Travelers*, 666 F.2d at 507. On this point, the *Travelers* court noted that the Eleventh Amendment does not bar suits against county school boards "so long as the entities sued are locally controlled, essentially local in character, and funds to defray the awards would not be derived primarily from the State Treasury." *Id.* As a result, the Eleventh Circuit held that "there is nothing that inheres in the nature of a county school board in Florida that would entitle it per se to Eleventh Amendment protection." *Id.* at 508.

Read together, neither *Travelers* nor *Jett* are supportive of the Plaintiff's position. Rather, as noted in *Schultz* and *Gamble*, it is well-settled that the Eleventh Amendment

protects USFBOT from suit under 42 U.S.C. §§ 1981, 1983, 1985, and 1986.  As a result, Counts I – III[1] of the FAC are barred on grounds of sovereign immunity.[2]

> **b.      Counts IV – VII, XIII-XIV, XVII-XVIII, and XX: Claims Involving Malice.**

Section 678.28(9)(a) of the Florida Statutes provides that "[t]he state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed . . . *with malicious purpose.*" Fla. Stat., § 768.28(9)(a) (2015) (emphasis added).  This rule applies "even where 'malice' is not an element of a cause of action." *Bussey-Morice v. Kennedy*, 2013 WL 71803, at *2 (M.D. Fla. Jan. 7, 2013).  "In applying Section 768.28(9)(a) on a motion to dismiss, Florida courts look to see whether the face of the complaint alleges bad faith or malicious purpose on the part of the government actor." *Boggess v. Sch. Bd. of Sarasota Cnty.*, 2008 WL 564641, at *5 (M.D. Fla. Feb. 29, 2008).  This is because pleading malice "will bar recovery against a state agency pursuant to sovereign immunity under 768.28(9)(a)." *Id.*

---

[1] In addition, Count III must be dismissed as to Ellucian because the FAC lacks allegations that the Defendants conspired to prevent the Plaintiff from attending or testifying before a federal court. To the contrary, the allegations in the FAC demonstrate that the Defendants' purported conduct had the effect of *encouraging* the Plaintiff to testify against the Defendants. *See Carpenter v. Mohawk Indus., Inc.*, 2012 WL 1886659, at *3 (11th Cir. 2012). The Plaintiff does not seriously contest this point, and instead claims to have a "claim for conspiracy to interfere with civil rights" under 42 U.S.C. § 1985(3). However, in Count III the Plaintiff only pleads her claim under 42 U.S.C. § 1985(2). Since there is no pending claim under Section 1985(3), it would be premature for the Court to consider whether the Plaintiff has stated, or could state, a claim under Section 1985(3).

[2] Having disposed of all of the Plaintiff's federal claims, the Court would ordinarily dismiss the remainder of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c). However, since the Plaintiff has indicated she intends to file a second amended complaint asserting claims under Title VII, the Court will analyze the Plaintiff's state law claims to avoid future duplication of efforts.

USFBOT asks the Court to dismiss Counts IV–VII, XIII-XIV, XVII-XVIII, and XX because those counts contain allegations that USFBOT's employees acted maliciously towards Plaintiff.  The Plaintiff responds by again arguing that USFBOT is not entitled to sovereign immunity, and by noting that USFBOT's employees are not immune from being sued personally for their allegedly malicious conduct.   Upon review, the Plaintiff's arguments are without merit.  First, as noted above, USFBOT is entitled to avail itself of the protections offered by the Eleventh Amendment.  Second, regardless of whether the Plaintiff may be able to state claims against USFBOT's employees in an individual capacity, Counts IV–VII, XIII-XIV, XVII-XVIII, and XX are pled against USFBOT; not against any of its individual employees or agents.  Since USFBOT is immune from being sued for the allegedly malicious conduct of its employees, any claims in which the Plaintiff alleges USFBOT's employees acted maliciously must be dismissed.

Here, Counts IV-VII, XIII, and XVII-XVIII contain allegations that USFBOT's employees acted maliciously towards the Plaintiff.  Counts XIV and XX do not, however, contain allegations that, taken as true and construed in the light most favorable to the Plaintiff, reflect allegations of malicious conduct by USFBOT's employees.  For example, unlike in Counts IV-VII, XIII, and XVII-XVIII, which contain unqualified allegations of malice, Count XIV merely contains an allegation that the "Defendants . . . directly or indirectly, negligently, recklessly, wantonly, and/or pretextually, wrote, developed, published, supplied and/or distributed the Ellucian Report." (FAC, at ¶ 313).  Taken as true and construed in the light most favorable to the Plaintiff, paragraph 313 does not allege that the Defendants' employees acted with malice.  Rather, paragraph 313 alleges that the Defendants caused the Plaintiff to suffer damages due to negligent, reckless,

and/or intentional conduct. Accordingly, at this stage of the pleadings, the Court will not dismiss Count XIV under Section 768.28(9)(a) of the Florida Statutes. The same holds true for Count XX, which does not contain unqualified allegations of malice. However, the Court will dismiss Counts IV-VII, XIII, and XVII-XVIII with prejudice for alleging that USFBOT's employees acted with malice.

### c.      Counts X & XI: Contract Claims.

The Florida Supreme Court has held that "where [a] state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from action arising from the state's breach of that contract." *Pan-Am Tobacco Corp. v. Dept. of Corrs.*, 471 So.2d 4, 5 (Fla. 1984). Nevertheless, this so called *Pan-Am Tobacco* rule "is applicable only to suits on express, written contracts into which the state agency has statutory authority to enter." *Id.* at 6. Thus, *Pan-Am Tobacco* has been interpreted to stand for the proposition that "[a]bsent a written agreement . . . a vendor cannot sue the state for money damages on a contract theory." *City of Gainesville v. State Dept. of Transp.*, 778 So.2d 519, 530 (Fla. 1st DCA 2001). Importantly, even where an express written contract exists, *Pan-Am Tobacco* has been interpreted to bar contract claims based on conduct that is not governed by the contract. *See C.O.B.A.D. Const. Corp. v. Sch. Bd. of Broward Cnty.*, 765 So.2d 844, 846 (Fla. 4th DCA 2000). For example, in *C.O.B.A.D. Const. Corp.* the Broward County School Board entered into a construction contract with a contractor, COBAD. *See C.O.B.A.D. Const. Corp.*, 765 So.2d at 845. COBAD performed "extra work" that was not provided for in the contract and sued the school board to be paid for the additional services. *Id.* The Fourth DCA held that since the contractor "sought additional compensation for extra work that was not included in the original contract or any

subsequent written change order . . . the doctrine of sovereign immunity precludes recovery of the cost of this extra work." *Id.* at 845-46.

Here, Count X of the FAC contains allegations that USFBOT breached two contracts: (i) a written contract that was in effect until June 30, 2015, and (ii) a verbal contract to extend the written contract through 2019. (FAC, at ¶¶ 254-255).  Count XI, on the other hand, alleges in the alternative that there "was no applicable contract or contractual provision," and instead seeks to hold USFBOT under a theory of promissory estoppel.  Based on the authorities cited above, the Plaintiff's claims based on the alleged verbal contract and/or under the doctrine of promissory estoppel are barred by principles of sovereign immunity.

Nevertheless, *Pan-Am Tobacco* is not a per se bar to the Plaintiff's claims based on the written contract.  However, upon review, Count X of the FAC lacks well-pled allegations regarding (i) the Plaintiff's rights under the contract, (ii) what provisions of the contract were breached, and (iii) how the contract was breached.  Moreover, the Plaintiff has failed to attach the contract to the FAC as an exhibit, or otherwise incorporate the contract into the FAC.  Thus, Counts X is dismissed with leave to amend as to the written contract, and Counts X and XI are otherwise dismissed with prejudice.

2.      *Counts VI and IX: Negligent Hiring, Retention, and Supervision (both Defendants)*

"A negligent hiring, retention, or supervision claim is allowed against an employer for acts of an employee committed *outside* the scope and course of employment." *Johnson v. Scott*, 2013 WL 5928931, at *6 (M.D. Fla. Nov. 1, 2013) (emphasis added); *see also Belizaire v. City of Miami*, 944 F.Supp.2d 1204, 1214 (S.D. Fla. 2013) ("[T]he tort of negligent hiring or retention under Florida law 'allows for recovery against an

employer for acts of an employee committed outside the scope and course of employment.'").

Here, the Defendants argue that Counts VI and IX must be dismissed because the Plaintiff has alleged that the tortious conduct underlying her negligent hiring, supervision, and retention claims occurred *within* the scope of employment.  Specifically, paragraph 196 of the FAC alleges that USFBOT "knew or . . . should have known that, Thompson was committing, allowing or encouraging inappropriate and unprofessional conduct of lying, defaming, slandering, and libeling DeBose's business/professional reputation *while in the course and scope of his duties for USF*, as shown by the following . . ." (FAC, at ¶ 196).  Moreover, paragraphs 250 and 253 of the FAC state that "Defendant Ellucian had a duty to exercise certain control over its employee, Andrea Diamond, in the discrete work she performed for USF," and that "[t]he negligent supervision of Andrea Diamond in the contractual relationship between USF and Ellucian has damaged Plaintiff." (FAC, at ¶¶ 250 & 253).  Taken together, these paragraphs allege that Diamond's tortious conduct occurred within the scope of her employment.  As a result, Counts VI and IX must be dismissed with prejudice as to both Defendants.[3]

     3.    *Count VIII: Tortious Interference (Ellucian)*

"The Florida courts have determined that 'an action will lie where a party tortuously interferes with a contract terminable at will.'" *Ahern v. Boeing Co.*, 701 F.2d 142, 144 (11th Cir. 1983).  "Thus, where the plaintiff shows an intentional and unjustified

---

[3] In addition, Count IX must be dismissed as to USFBOT because the conduct at issue was allegedly perpetrated by Andrea Diamond, who is an employee of Ellucian. *See* (FAC, at ¶ 17) ("Andrea Diamond . . . was employed at all relevant times by Ellucian."). *See Btesh v. City of Maitland, Fla.*, 2011 WL 326947, at *4 (M.D. Fla. July 29, 2011) ("To prevail on a claim for negligent hiring, retention, training, or supervision, the plaintiff must demonstrate injury caused by an employee, not merely an agent, of the defendant.").

interference with an existing business relationship which causes damage to the plaintiff, a prima facie case is established." *Id.*

Notwithstanding this precedent, Ellucian argues that "an action for tortious interference will <u>not</u> lie where a contract is terminable at will" and, in support, cites the case of *Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc.*, 629 So.2d 252, 255 (Fla. 3d DCA 1993) (emphasis added).  Upon review, *Greenberg* does in fact state that "The general rule is that an action for tortious interference will <u>not</u> lie where a party tortuously interferes with a contract terminable at will." *Id.* at 255 (emphasis added). However, in making that pronouncement, *Greenberg* relies on the case of *Perez v. Rivero*, 534 So.2d 914 (Fla. 3d DCA 1988), which, to the contrary, states: "the general rule is that an action <u>will</u> lie where a party tortuously interferes with a contract terminable at will." *Perez*, 534 So.2d at 916 (emphasis added). As evidenced by a comparison of *Greenberg* and *Perez*, it is unclear whether an at will employment contract can form the basis for a claim for tortious interference.  Nevertheless, the weight of Florida precedent seems to acknowledge that at will employment agreements still "possess the essential attributes of contracts." *Knight v. Palm City Millwork & Supply Co.*, 78 F.Supp.2d 1345, 1347-48 (S.D. Fla. 1999).  As a result, the Court is inclined to agree that, at least at the pleadings' stage, a plaintiff may plausibly state a claim for tortious interference with an at will employment agreement. *See Ahern*, 701 F.2d at 144.

Applied to the facts of this case, Count VIII alleges that Ellucian "knew of the business relationship Plaintiff had with USF in her position as University System Registrar," and "the interference by . . . Ellucian . . . did induce USF to terminate Plaintiff's employment as University System Registrar." (FAC, at ¶¶ 235 & 230).  While these

allegations echo the elements for a claim for tortious interference, elsewhere in this order the Court has noted that the FAC lacks well-pled allegations regarding the Plaintiff's rights under her employment agreement with USFBOT.  In fact, the Court the Plaintiff failed to attach or incorporate operative provisions of that agreement into the FAC.  Given those shortcomings, the Court lacks sufficient information from which to determine whether the Plaintiff has stated a claim for tortious interference and, as a result, will dismiss Count VIII with leave to re-plead.

4.    *Count XIV: Negligence and Gross Negligence (Ellucian)*

To plead negligence, the Plaintiff must allege: (1) that Ellucian owed the Plaintiff a duty; (2) that Ellucian failed to conform to that duty; (3) a causal connection between the nonconforming conduct and the Plaintiff's injuries; and (4) actual harm to the Plaintiff. *See Williams v. Davis*, 974 So.2d 1052, 1056 (Fla. 2007).  The primary issue raised in the Ellucian Motion is whether the Plaintiff has adequately pled that Ellucian owed a duty to the Plaintiff.  Florida courts have applied Section 552 of the Restatement (Second) of Torts to claims asserted against consultants by third-parties. *See Herons Cove Enters., LLC v. Epic Consulting, Inc.*, 2008 WL 2915066, at *4 (M.D. Fla. July 25, 2008).  Section 552 states, in pertinent part, that:

> One who . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information. [However], the liability . . . is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows the recipient intends to supply it; and (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552 (1977).  Section 552 has been interpreted to permit engineering consultants to be sued for negligence by subsequent, downstream purchasers of property; despite the fact that the engineer's reports were commissioned by prior owners of the property. *Herons Cove*, 2008 WL 2915066, at *4.  Moreover, as was the case in *Herons Cove,* Section 552 may permit affiliates of entities that contract for consulting services to assert negligence claims against the consultant despite the fact that they were not direct parties to the consulting agreement. *Id.*  Accordingly, under the right circumstances, it is possible for consultants to owe a duty to third-parties in connection with the services they provide to their clients.

Nevertheless, taken as true, the allegations in the FAC are not sufficient to give rise to a claim for negligence under Section 552.  This is because the FAC lacks any allegations that the Plaintiff was "the person or one of a limited group of persons for whose benefit and guidance [Ellucian] intend[ed] to supply" the Ellucian Report, or was a person whom Ellucian knew USFBOT intended to supply with the Ellucian Report.  The absence of any such allegations in the FAC is unsurprising given that USFBOT, and not the Plaintiff, was the entity for whose benefit and guidance the Ellucian Report was prepared. Unlike in *Herons Cove*, where the plaintiff was a close affiliate of the entity for whose benefit and guidance the engineering report was prepared, the Plaintiff is merely an employee of USFBOT.  Any benefit and guidance derived from the Ellucian Report was procured for USFBOT as a collective entity; not for DeBose as an individual.  Stated simply, it is inconceivable that Ellucian, in preparing the Ellucian Report, could have understood that it was working for the benefit and guidance of DeBose, or that DeBose would justifiably rely on the Ellucian Report.  Accordingly, to the extent Ellucian was

negligent (or grossly negligent) in preparing the Ellucian Report, USFBOT (and not DeBose) is the proper party to assert such a claim.

>    5.    *Count XV: Conspiracy (both Defendants)*

"In Florida, to state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more parties; (2) to do an unlawful act by unlawful means; (3) an overt act in furtherance of the conspiracy; and (4) damage resulting from the acts done under the conspiracy." *Whitney Nat. Bank v. SDC Cmtys., Inc.*, 2010 WL 1270264, at *4 (M.D. Fla. Apr. 1, 2010). "To allege conspiracy, Plaintiff must allege particularized facts that are more than vague or conclusory." *Id.*

Here, the Defendants argue that the FAC lacks well-pled factual allegations that plausibly give rise to a claim for civil conspiracy. In particular, the Defendants note that the only unlawful conduct identified by the Plaintiff in Count XV of the FAC consists of cursory references to "a scheme to defame, discredit, and terminate Plaintiff." (FAC, at ¶ 329). The Defendants contend that these allegations constitute legal conclusions, rather than well-pled factual allegations, and do not plausibly suggest that the Defendants committed any unlawful acts. In addition, Ellucian argues that the Plaintiff cannot base her claim for civil conspiracy on allegations of wrongful termination, as she has failed to allege the existence of an employment contract for a definite term. The Plaintiff responds that she has alleged that "an agreement existed among employees of USF and Ellucian to carry out an invidious plan to terminate her on account of her race and in retaliation for charges of discrimination" filed by the Plaintiff. (Doc. No. 21, at 15). The Plaintiff also references allegations from Count XIII of the FAC relating to negligent misrepresentation and fraud, which she contends constitute unlawful acts sufficient to satisfy the second element of her civil conspiracy claim.

As an initial matter, Count XV of the FAC is subject to dismissal for being a shotgun pleading.  Unlike other portions of the FAC, which only incorporate specific paragraphs of the FAC into each claim, Count XV contains a general incorporation "of all paragraphs, as if fully set forth in this paragraph." (FAC, at 51).  The Plaintiff's failure to incorporate specific paragraphs into Count XV is problematic, particularly given that the unlawful conduct identified in the responses, i.e. acts of race discrimination, retaliation, negligent misrepresentation, and fraud, differ from the allegations of wrongdoing identified in paragraph 329 of the FAC, i.e. defamation and wrongful termination.  To ensure that the Defendants have adequate notice if what unlawful acts the Plaintiff alleges they conspired to commit, Count XV must be dismissed with leave to amend.[4]

> 6.    *Count XVIII: Intentional Infliction of Emotional Distress (Ellucian)*

"To establish a claim for intentional infliction of emotional distress, Plaintiff must allege 'conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Saadi v. Maroun*, 2008 WL 4194824, at *4 (M.D. Fla. Sept. 9, 2008).  "[W]hether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of intentional infliction of emotional distress is a *matter of law for the*

---

[4] To the extent the Plaintiff alleges that the Defendants conspired to commit wrongful termination, the Plaintiff must allege, in any amended complaint, that she was employed under a contract for a definite term. *See Rivera v. Avis Budget Car Rental, LLC*, 2011 WL 6840946, at *5 (M.D. Fla. Dec. 29, 2011).  Since the Plaintiff's employment contract has not been attached to or incorporated in the FAC, the Court cannot determine whether the Plaintiff can plausibly allege a wrongful termination. *See Raytheon Subsidiary Support Co. v. Crouch*, 548 So.2d 781, 783-84 (Fla. 4th DCA 1989) (providing factors for courts to consider in determining whether a contract is for a specific duration).

*court*, not a question of fact." *Griffin v. Polk Cnty. Sheriff's Office*, 2009 WL 5171754, at *2 (M.D. Fla. Dec. 23, 2009) (emphasis in original).

Upon review, the allegations in the FAC are insufficient to rise to the level of outrageousness required to state a claim for intentional infliction of emotional distress. Unlike in the cases in which plaintiffs have been found to have stated a claim for intentional infliction of emotional distress, the FAC lacks allegations of "repeated verbal abuse coupled with repeated offensive physical conduct." *Id.* at *3 (citing *Johnson v. Thigpin*, 788 So.2d 410, 413 (Fla. 1st DCA 2001)). As a result, Count XVIII must be dismissed with prejudice.

### 7. Count XII: Equitable Estoppel (USFBOT)

"In Florida, equitable estoppel is an affirmative defense, not a cause of action" and, as a result, claims for equitable estoppel are subject to dismissal. *Rouse v. Nationstar Mortg., LLC*, 2014 WL 1365420, at *3 (M.D. Fla. Apr. 7, 2014). As a result, Count XII is subject to dismissal with prejudice.

### 8. Count XIX: Vicarious Liability (both Defendants)

Under Florida law, vicarious liability "is a separate cause of action that must be specifically pled in the complaint." *Goldschmidt v. Holman*, 571 So.2d 422, 423 (Fla. 1990). The Florida Supreme Court has held that "[a]n employer is vicariously liable for *compensatory* damages resulting from the negligent acts of employees committed within the scope of their employment even if the employer is without fault." *Mr. Furniture Warehouse, Inc. v. Barclays American/Commerical, Inc.*, 919 F.2d 1517 (11th Cir. 1990). With respect to punitive damages, however, the plaintiff must "allege and prove some fault on the part of the employer which foreseeably contributed to the plaintiff's injury to make him vicariously liable." *Id.* Vicarious liability in unavailable to establish liability for

constitutional torts under 42 U.S.C. § 1983. *See Sears v. Williams*, 2013 WL 673483, at *3 (S.D. Ala. Jan. 3, 2013).

Here, the Defendants ask the Court to dismiss Count XIX for numerous reasons, including that the Plaintiff's claim for vicarious liability is superfluous and because the Plaintiff fails to properly allege that the Defendants' employees committed negligent acts within the scope of their employment.  Since the Plaintiff is being granted leave to amend various counts of the FAC, the Court will deny the Motions as they pertain to Count XIX without prejudice.  In any second amended complaint, the Plaintiff should clearly allege the claims and bases for imposing vicarious liability on either or both of the Defendants.

### 9. *Count XX: Spoliation (USFBOT)*

There is no independent cause of action against a first-party defendant for spoliation of evidence. *Martino v. Wal-Mart Stores, Inc.*, 908 So.2d 342, 347 (Fla. 2005). Rather, the appropriate remedy is to impose a presumption and sanctions on the offending party. *Id.*  Here, the Plaintiff asserts a claim of first-party spoliation against USFBOT.  Since Florida law does not recognize a cause of action for first-party spoliation, Count XX must be dismissed with prejudice.  The Plaintiff may seek sanctions for any spoliation of evidence allegedly caused by USFBOT through the appropriate Federal Rules of Civil Procedure.

### 10. *Counts XIV and XVI: Condition Precedent*

Section 768.28(6)(A) of the Florida Statutes requires plaintiffs to provide written notice of any claim against the state or one of its agencies to the Department of Financial Services. Fla. Stat., § 768.28(6)(a) (2015).  Compliance with Section 768.28(6)(a) is a mandatory condition precedent to bringing a civil action against an agency of the state. *Commercial Carrier Corp. v. Indian River Cty.*, 371 So.2d 1010, 1022 (Fla. 1979).

Accordingly, where a plaintiff fails to allege compliance with Section 768.28(6)(a), the Court is required to dismiss the Plaintiff's claims for failure to comply with conditions precedent. *See Anderson v. City of Groveland*, 2015 WL 6704516, at *11 (M.D. Fla. Nov. 2, 2015). Here, the FAC fails to allege compliance with Section 768.28(6)(a). As a result, the Plaintiff's remaining claims against USFBOT, Counts XIV and XVI, must be dismissed with leave to amend.

### C.    Motion to Strike

In the USF Motion, USFBOT asks the Court to strike the Plaintiff's requests for punitive damages in Counts I-III and X-XIV of the FAC. Since the Court has dismissed each of the referenced claims, USFBOT's request to strike the Plaintiff's requests for punitive damages is denied without prejudice.

### III.    Conclusion

Accordingly, it is

**ORDERED** that the Motions are **GRANTED IN PART AND DENIED IN PART** as follows:

> (i)   Counts I-VII, IX, XI-XIII, XVII-XVIII, and XX are **DISMISSED WITH PREJUDICE** as to USFBOT;
>
> (ii)  Counts III, IX, and XIV are **DISMISSED WITH PREJUDICE** as to Ellucian;
>
> (iii) Counts X, XIV-XVI, and XIX are **DISMISSED WITH LEAVE TO AMEND** as to USFBOT; and
>
> (iv)  Counts VIII, XV, and XIX are **DISMISSED WITH LEAVE TO AMEND** as to Ellucian.

It is further **ORDERED** that USFBOT's motion to strike is **DENIED WITHOUT PREJUDICE**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 5th day of April, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Parties and Counsel of Record