**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ANGELA DEBOSE,**
**Plaintiff,**
**v.** **CASE NO. 8:15-cv-02787-EAK-AEP**

**UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES, and ELLUCIAN COMPANY, L.P.,**
**Defendants.**
**___________________________________/**

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGEMENT AS A MATTER OF LAW**

Plaintiff Angela DeBose files her Memorandum of Law in Opposition to the University of South Florida Board of Trustees' ("USFBOT") Oral Motion for Judgment as a Matter of Law [456] on September 20, 2018. USFBOT's motion follows successive attempts for a mistrial and now seeks to remove Plaintiff's Civil Rights case from being decided by six conscientious jurors.

## MEMORANDUM OF LAW

### A. Applicable Legal Standards

Motion for Judgment as a Matter of Law (Rule 50)

Through Rule 50 of the Federal Rules of Civil Procedure a party at trial can challenge deficiencies in an opponent's case in a motion for judgment as a matter of law ("JMOL"). Such a motion tests whether there is a "legally sufficient evidentiary basis for a reasonable jury to find" for the moving party. *Ruyle v. Continental Oil Co*., 44 F.3d 837, 841 (10th Cir. 1994). It has become a device by which a court could enter judgment independent of any jury disposition where the evidence was so insubstantial that it failed to warrant submission to the jury. *Southern Ry. Co. v. Walters*, 284 U.S. 190, 194 (1931). Overriding such legal maneuver is the sacrosanct Seventh Amendment right of trial by jury and the verdict reached, under the Constitution. The court can overturn the jury's verdict only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." F.R.Civ.P 50(a). "The standard that [defendants] must meet is very high." *Costa v. Desert Place, Inc.*, 299 F.3d

838, 859 (9th Cir. 2002) The Court " 'may not substitute its view of the evidence for that of the jury,' [and may] neither make credibility determinations nor weigh the evidence. *Costa*, id., quoting *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1226 (9th Cir.2001). The Court "must draw all inferences in favor of [the prevailing party]." *Costa*, id., citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). Therefore, the Court is bound to give the prevailing party "the benefit of all inferences which the evidence fairly supports, even though contrary inferences might reasonably be drawn." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696 (1962). The Court must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Costa*, 299 F.3d at 859, quoting *Reeves*, 530 U.S. at 151. The Eleventh Circuit has held that Rule 50 must be adjudged in light of the rule's twin purposes: (1) to ensure that the trial court has an adequate basis for a decision on the motion; and (2) to afford the opposing party an opportunity to correct any deficiencies in the proof presented. *See Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998) (finding requirement "ensures that the court and the opposing party will be alerted to any sufficiency problems at a stage when such deficiencies might be remedied").

**B. Right to Sue and Equitable Tolling**

Title 42 of the United States Code provides two avenues of relief against employment discrimination on the grounds of race. Under 42 U.S.C. § 1981 "... [a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts ... as is enjoyed by white citizens ..." in every state and territory. 42 U.S.C. § 1981 (1981). It is settled that the terms of § 1981 prohibit racial discrimination in the making of private sector employment contracts. *Patterson v. McLean Credit Union*, ___ U.S. ___, 109 S. Ct. 2363, 105 L. Ed. 2d 132 (1989). Similarly, 42 U.S.C. § 2000e-2(a) (1) & (2) states that it is an unlawful employment practice to "... fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual ..." or to "... limit, segregate or classify ..." employees because of such individual's race. 42 U.S.C. § 2000e-2(a) (1) & (2) (1981).

Although both statutory sections aim at prohibiting racial discrimination in employment, specific procedural requirements must be taken by a plaintiff seeking relief under § 2000e *et seq.* which are absent

from the face of § 1981. Section 2000e-5(f) (1) of Title VII states: [I]f a charge filed with the [Equal Employment Opportunity] Commission [of discrimination] is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge ... the Commission has not filed a civil action ... the Commission ... shall so notify the person aggrieved and within ninety days after the filing of such notice a civil action may be brought against the respondent named in the charge ... 42 U.S.C. § 2000e-5(f) (1).

It has been held by the circuits that the receipt of a Right to Sue Letter is a condition precedent to a Title VII claim rather than a jurisdictional prerequisite and thus, the receipt of such a letter prior to the dismissal of a Title VII action will cure the initial failure to satisfy the condition precedent. *Pinkard v. Pullman Standard; a Div. of Pullman, Inc.,* 678 F.2d 1211, 1215 (5th Cir.1982) (per curiam), *cert. denied,* 459 ***536** U.S. 1105, 103 S. Ct. 729, 74 L. Ed. 2d 954 (1983). The above principle is supported by the policy that to bar a Title VII claim for a failure to follow specific filing requirements is an extreme sanction to impose on one who acted too soon rather than too late. *Id.* at 1218. Similarly, it is the entitlement to the right to sue letter rather than the actual issuance which is a prerequisite to the jurisdiction of a federal court. *Bradford v. General Telephone Co. of Michigan,* 618 F. Supp. 390, 395 (W.D.Mich. 1985). Thus, where a Title VII plaintiff files his action first and then subsequently receives a right to sue notice while that action is pending, the requirement of a right to sue letter is satisfied. *Williams v. Washington Metro. Area Transit Auth.,* 721 F.2d 1412, 1418 n. 12 (D.C.Cir.1983) (Citations Omitted). *See also, Galvan v. Bexar County,* 785 F.2d 1298, 1305-06 (5th Cir.1986). While the procedural requirements mandated by Title VII appear absolute, the United States Supreme Court has held that "... filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S. Ct. 1127, 1132, 71 L. Ed. 2d 234 (1982). In support of the above holding, the *Zipes* court noted "... we honor the remedial purpose of the legislation as a whole without negating the particular purpose of the filing requirement, to give prompt notice to the employer." *Id.* at 398, 102 S. Ct. at 1135. Thus, a failure to comply with the

ninety day filing requirements proscribed by 42 U.S.C. § 2000e-5(f) (1) additionally is not a jurisdictional bar to a plaintiff's suit, but rather an affirmative defense to be plead by the defendant in a Title VII action. *Ruiz v. Shelby County Sheriff's Dept.*, 725 F.2d 388, 391 (6th Cir.1984), *cert. denied,* ***533** 469 U.S. 1016, 105 S. Ct. 428, 83 L. Ed. 2d 355 (1984).

The Eleventh Circuit has stated: We find these rationales persuasive: (1) 29 C.F.R. § 1601.28(a) does not prohibit the EEOC from issuing an early right to sue notice prior to the expiration of a 180–day period; (2) the purpose of the 180–day period is to protect the aggrieved party from extended administrative proceedings or bureaucratic backlog; and (3) where the EEOC determines, due to its huge backlog, that it cannot investigate an aggrieved party's charge within the 180–day period and notifies the aggrieved party that it is terminating its investigative efforts, it is pointless for the aggrieved party to stand by and mark time until the 180–day period expires. *See Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1061 (11th Cir. 1994). In allowing the case to proceed, the Eleventh Circuit further observed that the language and history of the statute reveal that [29 C.F.R. § 1601.28(a)] is fully consistent with the purposes of Title VII. *Id*.

Pursuant to the facts presented in the current case, the tolling of the § 2000e-5(f) (1) ninety-day period to file suit did not prejudice the Defendant, because the Defendant was on notice of the Plaintiff's allegations of discrimination when the Plaintiff filed her EEOC charge. Further, the Notice of Right to Sue issued to the Plaintiff specifically states: *You must [sue] within ninety (90) days of your receipt of this notice: Otherwise, your right to sue is lost*. The Plaintiff was represented by counsel at the time the notice was issued; Defendant had actual knowledge or constructive knowledge and cannot claim ignorance to Plaintiff’s Title VII claims. In fact, Defendant entered into a tolling agreement with Plaintiff. Further, the plaintiff was granted permission to amend her original complaint and was diligent in following the straight forward filing requirements required by 42 U.S.C. § 2000e-5(f) (1). There are no facts submitted by the Defendant of Plaintiff's inaction.

Finally, Federal Rules of Civil Procedure 15(c) states "... [w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction of occurrence set forth or

attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c). The circuits have stated that where a claim of discrimination is at issue "... federal courts should not allow procedural technicalities to preclude Title VII complaints." *Tipler v. E.I. duPont deNemours and Co.,* 443 F.2d 125, 131 (6th Cir.1971). Applying the above principles to the current fact situation and accepting that the statutory filing requirements of Title VII are not jurisdictional, the weight of authority supports the concept that premature filing of a Title VII action, prior to the later receipt of a notice of right to sue, will not defeat a plaintiff's Title VII claim. As noted above, the policy supporting Title VII is to provide a remedy for unlawful discrimination, a remedy not to be defeated by procedural technicalities. *See Tipler,* 443 F.2d at 131. Thus, following the rationale of the circuits, plaintiff contends the subsequent receipt of her right to sue notice cures the premature filing of a Title VII discrimination complaint with this Court. In fact, this Court previously rejected the Defendant's attempt to eliminate the Plaintiff's Title VII claim on a purely procedural basis, disputed issues of fact, as addressed in this Court's Order [210] in response to the Defendant's original motion for summary judgment. As before, Defendant's motion for JMOL (i.e. summary judgment) on the above procedural ground should be denied.

**C. Legal Sufficiency of Plaintiff's Case**

Adhering to the allocation of the burden of production and the order for the presentation of proof in Title VII discriminatory treatment cases that was established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, the Court found that Ms. DeBose established, by a preponderance of the evidence, a prima facie case of racial discrimination in the summary judgment order [210]. Defendant, in filing its motion for judgment as a matter of law on Ms. DeBose's discrimination and retaliation claims, argues that Plaintiff failed to prove Defendant's actions were motivated by race or that Ms. DeBose identified a similarly situated class. At trial, the Plaintiff has rebutted Defendant's alleged legitimate, nondiscriminatory reasons for their actions to show via direct and circumstantial evidence that the Defendant's reasons were pretextual and that the adverse actions were racially motivated.

Ms. DeBose presented sufficient evidence that Paul Dosal and Ralph Wilcox are managerial employees that acted within the scope of their employment when committing discriminatory acts against Ms. DeBose. Ms. DeBose presented sufficient evidence that their actions were motivated by her race in treating Ms. DeBose differently than her similarly situated white counterparts in Enrollment Planning & Management (EPM). See *Arnett v. Myers*, 281 F.3d 552, 560-62 (6th Cir. 2002) (plaintiff "must show that the adverse action was motivated, at least in part, by his or her protected conduct," and may rely on circumstantial evidence to show it). Of all the EPM directors, Ms. DeBose, the only black/African American, was the only director reporting to Paul Dosal not evaluated in 2014 or 2015. Of the EPM Directors, Ms. DeBose received marginal salary increases while her white counterparts received increases at or in excess of $25,000. Of the EPM Directors, Ms. DeBose was not considered or promoted to the position of AVP of EPM, though her qualifications and experience far exceeded those of her white counterparts and that she trained or onboarded her inexperienced supervisor. Ms. DeBose presented sufficient evidence that Paul Dosal's and Ralph Wilcox's actions regarding the reprimand and termination were motivated by the Plaintiff's race, treating Ms. DeBose differently than her similarly situated white counterparts who previously managed Degree Works/Tracking. Paul Dosal testified, and Ralph Wilcox grudgingly also testified, that Ms. DeBose successfully implemented Degree Works in 2010 and Tracking in 2012, in the manner prescribed by the vendor. Dosal and Wilcox also testified at deposition and at trial that while Ms. DeBose's white counterparts (i.e. Glen Besterfield, Christopher Cobb, Travis Thompson, and Carrie Garcia) were unsuccessful, Ms. DeBose, a black/African American, was the only person fired and moreover was not responsible for the system for approximately one year, when the action was taken. Ms. DeBose presented sufficient evidence that Dosal's and Wilcox's actions regarding her termination were motivated by her race in treating Ms. DeBose differently than her similarly situated white counterparts (i.e. Travis Thompson and Carrie Garcia) that were identified in Andrea Diamond's Ellucian Report as responsible for three significant risks. Ms. DeBose, the only black/African American, was the only one who experienced an adverse employment action (i.e. termination), in being the responsible party for an item listed as a risk in the Ellucian Report. The Plaintiff likewise showed that Dosal's and Wilcox'

decisions were contrary to a good faith effort to comply with Title VII and their proffered reasons for the adverse actions were pretextual, based on information they knew was false at the time (e.g. Angela's tirades driving Caurie to leave USF; Alexis Mootoo's little girl allegation; RO staff being kept from meeting with Ellucian's Andrea Diamond; and evidence to rebut the conclusory allegations that Ms. DeBose was uncollaborative). Dosal and Wilcox gave direct testimony that Ms. DeBose was terminated because of her protected activities – "complaints" (i.e. [Ethicspoint, DIEO, and EEOC] and "legal activities" [TRO/preliminary injunction]. Both Dosal and Wilcox testified that Ms. DeBose was not entitled to due process. *See Jeffers v. Gomez*, 267 F.3d 895, 907-908, 911 (9th Cir. 2001), which simply holds that to survive summary judgment, a plaintiff must allege specific facts showing improper motive. Plaintiff proffered evidence of the causal connection between her protected status (i.e. race) and her protected activities (i.e. EEOC/MDF complaints) sufficient to raise more than an inference that her protected status and protected activities were in fact the motivating factors for the adverse decision. Both Dosal and Wilcox testified that Ms. DeBose's race discrimination complaint was a reason for her termination; this fact alone entitles Plaintiff, and not the Defendant, to a directed verdict at the close of all the evidence.

Additionally, Plaintiff presented evidence that the adverse employment actions happened in close proximity to her EEOC complaint. Ms. DeBose presented evidence from Paul Dosal that within two weeks following her EEOC complaint, Ms. DeBose was asked to meet with Dosal and Alexis Mootoo. Following Ms. Mootoo's departure, Ms. DeBose produced evidence sent to her supervisor about his treatment to berate and marginalize her, insisting that she *not* be treated that way again and reminding him that she filed a charge of illegal discrimination. Ms. DeBose introduced evidence that on February 3, 2015, Ms. DeBose was ordered to attend a meeting with no specific agenda. Though asked several different ways, Paul Dosal refused to tell her what the meeting was about. Ms. DeBose introduced evidence that Dosal and Wilcox were aware that Ms. DeBose filed for a temporary restraining order (TRO) and preliminary injunction on February 4, 2015 as a result, approximately one month after filing EEOC charges, due to the increasingly hostile and retaliatory work environment to which Ms. DeBose

was subjected. The Plaintiff introduced evident that on February 4, 2015, one month after Ms. DeBose's EEOC complaint, Paul Dosal issued a "first-ever" written reprimand to Ms. DeBose, alleging unprofessional conduct. Plaintiff introduced evidence showing that in Dosal's preparation of the reprimand, Lori Mohn, USFBOT General Counsel's Office employee, forwarded Paul Dosal a copy of Ms. DeBose's discrimination complaint. Again, Dosal and Wilcox testified DeBose was terminated because of "her complaints". Dosal testified (though Wilcox did not concede) that Ms. DeBose was also terminated because of her legal activities. Ms. DeBose introduced evidence that on March 5, 2015, within three months of Ms. DeBose's EEOC complaint and one month after Ms. DeBose's motion for TRO/preliminary injunction, the USF mini-eeoc office, DIEO, rendered a "no findings" determination letter in response to Ms. DeBose's complaint. Contrary to Defendant's argument, the record clearly shows more evidence than temporal proximity alone. The Plaintiff also introduced evidence that Tonia Suber, the investigator assigned to Ms. DeBose Ethicspoint complaint, worked so closely with Paul Dosal that she could not and would not be considered a neutral, unbiased third party. Suber was the contact person in Human Resources who also determined on Dosal's and Wilcox's behalf that Ms. DeBose was adequately paid. Suber also worked with Dosal and Mootoo on the written written reprimand for Ms. DeBose and worked with Camile Blake, DIEO investigator, on the March 5, 2015 DIEO Determination Letter. The Plaintiff introduced evidence that Paul Dosal told all the parties involved in the Degree Works/Tracking, Written Reprimand, Ellucian Onsite Visit, and Collaboration pretexts (i.e. Ralph Wilcox, Bob Sullins, Travis Thompson, Carrie Garcia, Sarah Thomas, Tonia Suber, and Alexis Mootoo) that Ms. DeBose filed discrimination charges against him to polarize them against Ms. DeBose. The Plaintiff's EEOC complaint was a *highly confidential* protected activity that the Defendant disclosed. Dosal's action created an adverse employment action for Ms. DeBose that resulted in isolation and a hostile retaliatory work environment that chilled the speech of those that supported her. See *Thaddeus-X v. Blatter,* 175 F.3d 378, 399 (6th Cir. 1999). Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support this inference. *Id.* A jury could conclude that USFBOT's failure to independently and properly investigate the derogatory emails, complaints, legal

action, and defacement of Ms. DeBose's property demonstrates a lack of good faith by the Defendant to comply with Title VII and a racially-motivated or retaliatory animus against Ms. DeBose. In questioning Dosal, the Plaintiff sought to introduce the Willie Lynch theory, demonstrating how USFBOT was in fact motivated by race in using other black/African American employees (i.e. Alexis Mootoo, Tonia Suber, Camile Blake and Kofi Glover) to retaliate against Ms. DeBose. Ms. DeBose introduced evidence of race from the testimony of Alexis Mootoo who stated Paul Dosal likewise "did nothing" when she complained of emotional abuse by Bob Spatig. Ms. Mootoo also alleged discrimination against her graduate program coordinator and while a formal charge was not made, Mootoo testified USFBOT "did nothing." According to her own testimony at trial, Ms. Mootoo actions were motivated by the desire "to maintain [my] employment". Ms. DeBose also introduced testimony to support the inference that Mootoo used the N-word in the Registrar's Office on different occasions in the presence of the staff, perhaps under the guise of "*black privilege*".

With regard to the negative reference with UNF, Ms. DeBose introduced evidence that Ralph Wilcox was not listed as a reference, was not Ms. DeBose's supervisor, and had no present knowledge of Ms. DeBose's work. Ms. DeBose also introduced evidence that Wilcox spoke with Earle C. Traynham at length (over 6 minutes) and voluntarily made adverse, negative statements about her – not to be "candid" but rather vindictive and contrary to USF policy. Ms. DeBose introduced testimony from Wilcox that he did not discuss Ms. DeBose's attendance, performance ratings, salary, etc.—the items recommended under USFBOT policy. Ms. DeBose introduced testimony that Wilcox did not consider Ms. DeBose's history at USF or her experiences with her prior supervisors, none of the which, that Wilcox had any knowledge of, stated that Ms. DeBose was "uncollaborative and resistant to change." Ms. DeBose introduced testimony from Wilcox that he was aware of her professional relationship with Albert Colom (though he did not recall his name) and that Mr. Colom informed Ms. DeBose of the Wilcox-Traynham discussion when rescinding the offer of employment. The Plaintiff introduced evidence to show that Wilcox's assertion that Ms. DeBose was "uncollaborative and resistant to change" appeared in the Webmaster@acad.usf.edu email, a domain controlled by Wilcox and his prior webmaster, Travis

Thompson; in Andrea Diamond's Ellucian Report; and was expressly stated by Wilcox to Earle C. Traynham. The jury could conclude from these facts that Wilcox's actions and influence against Ms. DeBose was racially-motivated and that Wilcox was also motivated by a retaliatory animus.

Prior to trial, Ms. DeBose sought a continuance to obtain counsel or research about her responsibilities at trial. Ms. DeBose estimated that it would require 20 hours to examine Wilcox (and likewise) Dosal. Ms. DeBose contended that the number of days for trial was not sufficient on that basis. During pretrial activities, Ms. DeBose sought to introduce her direct evidence to show race as a motivating factor through expert testimony and the testimony of 33 lay fact witnesses. The witnesses were stricken by the Magistrate and many pages of documents were excluded as a result, on the basis of hearsay. Ms. DeBose sought to introduce court documents (i.e. depositions from her state court action of Paul Dosal, Bob Sullins, and Caurie Waddell) which affirmed derogatory and racist emails about Ms. DeBose. Because the depositions were not taken in this case, the Court ruled the evidence could not be brought in. Additionally, the Court would not allow Ms. DeBose to introduce evidence of the Defendant's destruction of Plaintiff's evidence; the Magistrate declined to stipulate that USFBOT was on notice of its duty to preserve Plaintiff's evidence or give an adverse inference of the destruction. The Court would not allow Ms. DeBose to introduce evidence that USFBOT did not produce evidence during discovery for the months of March, April, and May that preceded her termination or evidence that USFBOT, a state agency, was withholding the evidence pursuant to state action to obtain them. (See February 8, 2017 Hearing Transcript). A jury could have concluded that the Defendant's failure to produce critical evidence, including derogatory email (e.g. *black bitch, black witch*), whether personally derogatory or "professionally derogatory", demonstrates a racially-motivated or retaliatory animus.

Based on the above and foregoing circumstances, Plaintiff contends she has met her burden to produce by a preponderance of evidence the factors that must be proven to prevail on a case of race discrimination and retaliation. Therefore, Plaintiff respectfully asks that her case move forward on the grounds of legal sufficiency to be decided by the ultimate fact-finder—the jury.

**D. Damages in a Civil Rights Case**

"Where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bivens v. Six Unknown Defendants*, 403 U.S. 388, 392 (1971), quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946). Deterrence is accomplished through the mechanism of compensatory as well as punitive damages. As the Supreme Court stated in *Memphis Community School District v. Stachura*, "[p]unitive damages aside…deterrence is also an important purpose of [§ 1983], but it operates through the mechanism of damages that are *compensatory* -- damages grounded in determinations of plaintiffs' actual losses." 477 U.S. 299, 306-07 (1986) (emphasis in original). "To that end, compensatory damages may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, ...personal humiliation, and mental anguish and suffering." *Id*.

Pursuant to Title VII, Plaintiff identified the following remedies in the joint pretrial statement with Defendant: (1) back pay; (2) pecuniary and nonpecuniary compensatory damages; (3) punitive damages; and (4) nonmonetary relief, including reinstatement. Plaintiff expressly identified her damages sought, though not the amounts, in the joint pretrial as determined for a government agency with more than 500 employees. In its motion for JMOL, USFBOT argues that Plaintiff in running out of time for her case in chief offered little or no proof of actual damages. On the contrary, Ms. DeBose and Defendant's counsel brought out testimony about Ms. DeBose's salary from her supervisor Paul Dosal, Ralph Wilcox, and Alexis Mootoo. At trial, Plaintiff's and Defendant's salary evidence provided further support for plaintiff's position. Plaintiff introduced testimony from her supervisor Paul Dosal about Plaintiff's depression, damage to reputation, isolation, loss of social standing, and absence of companionship at work.

'JMOL' should not be granted unless: (1) there is such a complete absence of evidence that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [people] could

not arrive at a verdict against him." *In re Products, Inc. Patent Litigation*, 766 F. Supp. 818, 821 (N.D.C.A. 1991), *Hayes Microcomputer* quoting *Jamesbury Corp. v. Litton Indus. Products, Inc.*, 756 F.2d 1556, 1558 (Fed. Cir. 1985), citing *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir. 1980). Even though Rule 50 necessarily entails an evidentiary inquiry, defendants' motions are almost completely devoid of any discussion of the evidence. The evidence in Plaintiff's favor has been compelling, as discussed herein.

Additionally, given that the test for JMOL is the same before submission to a jury as it is after submission to a jury, why not determine whether it should be granted, if at all, after the verdict:

> **We have in the past cautioned trial judges that it is preferable, "in the best interests of efficient judicial administration," to refrain from granting a motion for a directed verdict and instead to allow the case to be decided –at least in the first instance—by the jury. Pursuant to the recommended practice, if the jury reaches what the judge considers to be an irrational verdict, the judge may grant a motion for judgment notwithstanding the verdict. If this ruling is reversed on appeal, the jury's verdict may simply be reinstated. If however, a verdict has been directed and that ruling is reversed on appeal, an entire new trial must be held.**

*Konik v. Champlain Valley Physicians Hosp.*, 733 F.2d 1007, 1013 n.4 (2d Cir. 1984). The Court has several options to allow the Plaintiff Pro Se to submit her damages to the jury. Plaintiff filed a Motion in Limine (*denied*) to not consider her attorney status because she is not a practicing lawyer and has not handled any cases, other than her own, particularly at trial. Plaintiff further states her mistake or inadvertence was excusable, in response to the pressures of the clock time and the fact that no time was available to call another witness, including herself. Additionally, unbeknownst to Plaintiff, Defendant's counsel announced to the Court that he had witnesses waiting to be called. The Plaintiff respectfully asks the Court to consider the following options to allow her to submit her damages to the jury.

1. Allow the Plaintiff to stipulate to her damages.
2. Allow Plaintiff to submit evidence of her damages from her deposition.
3. Allow Plaintiff to submit evidence of her damages in Summation.
4. Reopen the evidence as to Plaintiff's damages. See *United States v. Bolt*, 776 F.2d 1463, 1471 (10th Cir.1985) (questions concerning the order of proof and permission to reopen the evidence are within the trial court's discretion).

5. Take judicial notice of the Plaintiff's damages. A court must take judicial notice of a fact "if requested by a party and supplied with the necessary information." FED. R. EVID. 201(c)(2). However, the noticed fact must be relevant to the issues in the case. "The court may take judicial notice at any stage of the proceeding," FED. R. EVID. 201(d), "as long as it is not unfair to a party to do so and does not undermine the [] court's factfinding authority." *Nantucket Investors II v. California Fed. Bank*, 61 F.3d 197, 205 (3d Cir. 1995).

6. Bifurcate (or divide) the trial/hearing to separately examine the damages on the case.

7. Allow the jury to independently decide the damages; the Defendant can make a separate motion for JNOV and/or the Court has discretion if the jury finds for Plaintiff and the damages are excessive.

**CONCLUSION**

WHEREFORE, Plaintiff respectfully asks the Court to deny Defendant's Motion for Judgment as a Matter of Law and allow the jury to decide the case.

Dated: **September 23, 2018**

/s/ *Angela DeBose*

Angela DeBose

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this **23rd** day of September, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a copy via email to all counsel of record identified in the Service List to receive Notices of Electronic Filing.

_/s/ *Angela DeBose*______

Angela DeBose

1107 W. Kirby St.

Tampa, FL 33604

(813) 932-6959

awdebose@aol.com