UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA DEBOSE,

      Plaintiff,

v.                             CASE NO. 8:15-cv-02787-EAK-AEP

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES, and
ELLUCIAN COMPANY, L.P.,

      Defendants.

_____/

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR NEW TRIAL

Defendant University of South Florida Board of Trustees ("USFBOT"), by and through its undersigned counsel and pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, hereby renews its Rule 50(a) motion made at the close of plaintiff's proof and renewed at the close of all proof.  Pursuant to Fed.R.Civ.P. 59, defendant USFBOT moves in the alternative for a new trial.  The grounds upon which the instant motion is based are set forth in the following Supporting Memorandum of Law.

## SUPPORTING MEMORANDUM OF LAW

### I.

### APPLICABLE LEGAL STANDARD

A party is entitled to judgment as a matter of law "if there is no legally sufficient evidentiary basis" for a reasonable jury to find for a plaintiff on a material element of his or her cause of action.  Fed.R.Civ.P. 50; *Christopher v. Florida,* 449 F.3d 1360,

1364 (11th Cir 2006); *Pickett v. Tyson Fresh Meats, Inc.,* 420 F.3d 1272, 1278 (11th Cir. 2005).

"Motions for directed verdict and for judgment notwithstanding the verdict need not be reserved for situations where there is a complete absence of facts to support a jury verdict." *Hipp v. Liberty Nat'l Life Ins. Co.,* 252 F.3d 1208, 1230 (11th Cir. 2001). "There must be a substantial conflict in the evidence" to support a jury question. *Silvera v. Orange County School Board,* 244 F.3d 1253, 1258 (11th Cir 2001). *See also Abel v. Dubberly,* 210 F.3d 1334, 1337 (11th Cir. 2000) ("a substantial conflict in the evidence is required before a matter will be sent to the jury"). Instead, judgment as a matter of law under Rule 50 should be granted where "the evidence is so weighted in favor of one side that one party must prevail as a matter of law." *Thosteson v. United States,* 331 F.3d 1294, 1298 (11th Cir. 2003); *see also Bishop v. City of Birmingham Police Department,* 361 F.3d 607, 609 (11th Cir. 2004).

Rule 59—governing motions for new trial—provides a less stringent standard than motions filed under Rule 50(b). A new trial may be granted "for any reason recognized at common law, even where there is substantial evidence supporting the verdict." *George v. GTE Directories Corp.,* 195 F.R.D. 696, 701 (M.D. Fla. 2000). Under this standard, the court must determine if the verdict is against the clear weight of the evidence or, if sustained, will result in a miscarriage of justice. *Id.*

In determining whether a new trial is warranted, the trial court is free to weigh the evidence independently. *McGinnis v. American Home Mortgage Servicing, Inc.,* 817 F.3d 1241, 1254-55 (11th Cir. 2016); *Williams v. City of*

TPA 512468392v2

*Valdosta,* 689 F.2d 964, 973 (11th Cir. 1982).  The trial court "is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well."  *McGinnis,* 817 F.3d at 1255, *quoting Williams,* 689 F.2d at 973.

## II.

## ARGUMENT

### A.   DeBose Failed To Establish A Condition Of Suit

Title VII requires a plaintiff to file a charge of discrimination and receive a Notice of Right to Sue from the EEOC as a condition of suit.  *Forehand v. Florida State Hospital at Chattahoochee,* 89 F.3d 1562 (11th Cir. 1996); *H & R Block v. Morris,* 606 F.3d 1285, 1295 (11th Cir. 2010).  Similarly, in order to bring a claim under the Florida Civil Rights Act ("FCRA"), a plaintiff must first file a charge of discrimination with the Florida Commission on Human Relations and exhaust the administrative remedies required by the FCRA.  *Sunbeam Television Corp. v. Mitzel,* 83 So.3d 865, 873-74 (Fla. 3d DCA 2012).

Title VII's procedural requirements are not to be relaxed for *pro se* litigants.  *See Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L. Ed. 2d 196  (1984) ("[p]rocedural requirements established by Congress for gaining access to federal courts are not to be disregarded by Courts out of a vague sympathy for particular litigants"); *Mohasco v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L. Ed. 2d 532 (1980) ("[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law").

3

Here, the parties' Joint Pretrial Statement expressly stated that an issue of fact to be resolved at trial was whether Debose satisfied all conditions precedent to suit. [Doc. 361, p. 25].  Notwithstanding that fact, DeBose failed to introduce any evidence that she filed a charge of discrimination alleging retaliatory termination or that she received a Notice of Right to Sue on her termination claim.  As such, DeBose failed to prove that she satisfied all conditions precedent to suit and, therefore, judgment as a matter of law should be entered for USFBOT.

**B.    DeBose Did Not Present Sufficient Evidence On Her Retaliation Claim To Reach the Jury**

To establish a *prima facie* case of retaliation under Title VII[1], DeBose was required to show:  1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) there is a causal link between her protected activity and the adverse action.  *Weeks v. Harden Mfg. Corp.,* 291 F.3d 1307, 1312 (11th Cir. 2002); *Gupta v. Florida Board of Regents,* 212 F.3d 571, 587 (11th Cir. 2000).

If DeBose established a *prima facie* case of retaliation, the burden shifts to USFBOT to provide a legitimate, non-retaliatory reason for the adverse action. *E.E.O.C. v. Reichhold Chemicals, Inc.,* 988 F.2d 1564, 1571-72 (11th Cir. 1993). Once USFBOT provided such a reason, the burden then shifts back to DeBose to prove, by a preponderance of the evidence, that USFBOT's reason was not a true reason, but merely pretext for retaliation.  *Meeks v. Computer Associates Int'l.,* 15 F.3d 1013, 1019 (11th Cir. 1994).  Pretext means more than inconsistency; pretext is

---

[1] Retaliation claims under the FCRA follow the Title VII analysis.  *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1389-90 (11th Cir. 1998).

4

"'a lie, specifically a phony reason for some action.'" *Brown v. Sybase, Inc.,* 287 F.Supp.2d 1330, 1340 (S.D. Fla. 2003), *quoting Silvera v. Orange County School Bd.,* 244 F.3d 1253, 1261 (11th Cir. 2001).  Whether the reason provided by USFBOT for terminating DeBose was a pretext for retaliation, must be established by DeBose through "significantly probative evidence." *Johnson v. Atlanta Indep. Sch. Sys.*, 137 Fed. Appx. 311, 315 (11th Cir. 2005); *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993) (citations omitted).

Importantly, DeBose could not meet her burden "by simply quarreling with the wisdom of that reason." *Wood v. Calhoun Cty. Fl.,* 626 Fed. Appx. 954, 956 (11th Cir. 2015), *quoting Chapman v. Al Transp.,* 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).  "The inquiry into whether an employer's proffered reasons were merely pretextual centers on the employer's beliefs, not the beliefs of the employee or even objective reality."  *Lopez v. AT&T Corp.,* 457 Fed. Appx. 872, 874 (11th Cir. 2012); *Alvarez v. Royal Atlantic Developers, Inc.,* 610 F.3d 1253, 1266-67 (11th Cir. 2010), *Barsorian v. Grossman Roth, P.A.,* 572 Fed. Appx. 864, 869 (11th Cir. 2014) ("[e]ven a showing that the employer fired the employee on the basis of an incorrect assessment is insufficient, for if the employer honestly but mistakenly believed it had accurate information, then its decision to terminate the employee was not discriminatory").

**1.**  **DeBose failed to introduce sufficient evidence to prove the causation element of a *prima facie* case.**

As this Court noted in *Banks v. iGov Technologies, Inc.,* 2015 WL 12939794 at *12 (M.D. Fla. Oct. 27, 2015), following the Supreme Court's decision in

*University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. 338, 133 S.Ct. 2517, 186 L. Ed. 2d 583 (2013), a plaintiff must show more than temporal proximity between the protected activity and his or her termination to satisfy the causation element of a *prima facie* case of retaliation.  Instead, a plaintiff must establish that his or her protected activity was a "but-for" cause of the adverse action by the employer.  *Nassar,* 133 S.Ct. at 2534.

The "but-for" cause element "requires a closer link than mere proximate causation, it requires that the proscribed animus have a determinative influence in the employer's adverse decision."  *Sims v. MVM, Inc.,* 704 F.3d 1327, 1335-36 (11th Cir. 2013).  *See also Smith v. City of Fort Pierce,* 565 Fed. Appx. 774 (11th Cir. 2014) (to establish a *prima facie* case of retaliation, a plaintiff must offer evidence from which a reasonable jury might conclude that an employer's retaliatory animus was the "but-for" cause of the adverse action).

In response to USFBOT's Rule 50 motion—and in closing argument[2] to the jury—DeBose argued that Wilcox and Dosal testified that DeBose's race discrimination complaints were a reason for her termination.  [Doc. 461, p. 7].  DeBose's arguments, however, were an express misrepresentation of Wilcox's and Dosal's testimony.  Contrary to DeBose's representations, both witnesses testified that DeBose's complaints of discrimination had nothing to do with the termination decision.  [Trial Transcript, Day 3: pp. 154-55, lines 16-25; 1-4; Day 4:

---

[2] *See* Trial Transcript, Day 10:  p. 7, lines 23-25; p. 16, lines 9-14.

pp. 23-24, lines 1-16; pp. 55-57, lines 8-25; 1-25; p. 192, lines 16-18; Day 6: pp. 134-35, lines 19-25; 1-9; Day 8: p. 37, lines 15-24).

With regard to temporal proximity, the evidence at trial was that DeBose filed her EEOC charge in late December of 2014 and filed her first federal action in January of 2015 - - - some 4-5 months before her termination.  DeBose's other complaints occurred even earlier. As this Court recognized in *Banks*, a four to five-month gap between plaintiff's last protected activity and her termination "is too great even under pre-*Nassar* precedent, to give rise to an inference that [plaintiff] was terminated for engaging in a statutorily protected activity." *Banks, supra.* At *12.

Indeed, numerous other courts have similarly held that a three or four-month delay between the statutorily protected activity and the adverse employment action is too long to prove causation.  *See Thomas v. Cooper Lightning, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007), *citing Richmond v. Oveok, Inc.,* 120 F.3d 205, 209 (10th Cir. 1997) (3-month period insufficient); and *Hughes v. Derwinski,* 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient).  *See also Higdon v. Jackson,* 393 F.3d 1211, 1220-21 (11th Cir. 2004) (three-month period did not allow a reasonable inference of a causal relationship between the protected expression and the adverse action); *Wascura v. City of South Miami,* 257 F.3d 1238 (11th Cir. 2001) (3 1/2-month gap insufficient); *Embry v. Callahan Eye Found. Hosp.,* 147 Fed. Appx. 819, 831 (11th Cir. 2005) (three-month gap between protected activity and adverse employment action was insufficient to establish an inference of retaliation).

7

Moreover, as the Supreme Court explained in *Burrage v. United States,* 571 U.S. 204, 134 S.Ct. 881, 888-89, 187 L. Ed. 2d 715 (2014), a factor is a "but-for" cause even if "combines with other factors to produce the result, so long as the other factors alone would not have done so." Here, DeBose did not present any evidence proving that her protected activity was an indispensable factor, without which her termination would not have occurred.

To the contrary, the jury's mixed motion verdict on Count I - - - finding that, DeBose would have been terminated regardless of any racial motivation - - - completely negates DeBose's ability to prove that her protected activity was a "but-for" cause of her termination. That finding conclusively demonstrates that DeBose failed to prove that "other factors alone" would not have caused her termination. *Burrage,* 134 S.Ct. at 888-89. *See Smith v. City of Fort Pierce, supra* at 779 (affirming grant of summary judgment where employee could not "establish that a protected activity was the but-for cause of [the employer's] alleged unlawful retaliation").[3]

Finally, it is well established that intervening acts are sufficient to sever a causal connection between protected activity and an adverse employment action. *Banks, supra.* At *12; *see also Henderson v. FedEx Express,* 442 Fed. Appx. 502, 507 (11th Cir. 2011) ("[i]ntervening acts of misconduct can break any causal link

---

[3] *See also Jones v. Allstate Insurance Co.,* 281 F.Supp.3d 1211 (N.D. Ala. 2016) (multiple "but-for" employment discrimination claims may not proceed past summary judgment); *Mora v. Jackson Memorial Foundation, Inc.,* 597 F.3d 1201, 1204 (11th Cir. 2010) ("[b]ecause an ADEA plaintiff must establish 'but for' causality, no 'same decision' affirmative defense can exist, the employer either acted 'because of' the plaintiff's age or it did not").

between the protected conduct and the adverse employment action"); *Hankins v. Airtran Airways, Inc.,* 237 Fed. Appx. 513, 521 (11th Cir. 2007); *Schoebel v. American Integrity Ins. Co. of Florida,* 2015 WL 4231670, at *3 (M.D. Fla. July 10, 2015).

Here, USFBOT's receipt of the Ellucian Report was an intervening event that severed any causal connection between DeBose's protected activity and her termination.  As demonstrated at trial, USFBOT received the consultant's report from Ellucian four or five months after DeBose engaged in her last protected activity at USF. There is no dispute that the Ellucian Report was critical of DeBose and identified the Registrar's Office as a risk to the success of USFBOT's DegreeWorks initiative. [Trial Transcript, Day 3:  p. 143, lines 18-20; Day 6: pp. 45, 95, 143]. Since it cannot be said that no employer could ever base a termination decision upon criticisms of DeBose contained in the Ellucian Report, USFBOT's receipt and review of the Report was an intervening event that severed any causal connection between DeBose's protected activity and her termination.  For that additional reason, DeBose failed to meet her burden of establishing the third element of a *prima facie* case of retaliation.

In short, apart from the mere fact that one followed the other[4], DeBose failed to present sufficient evidence at trial to establish the requisite causation element of a *prima facie* case.  Therefore, judgment as a matter of law should be

---

[4] *See McClain v. Metabolife Int'l, Inc.,* 401 F.3d 1233, 1243 (11th Cir. 2015) ("[t]he *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence"); *Bermudez v. TRC Holdings, Inc.,* 138 F.3d 1176, 1179 (7th Cir. 1998) ("*[p]ost hoc ergo propter hoc* is not enough to support a finding of retaliation").

entered for USFBOT.  Alternatively, because the verdict is against the clear weight of the evidence, a new trial should be ordered.

### 2.  <u>DeBose also failed to introduce sufficient evidence to prove pretext.</u>

USFBOT articulated a legitimate, nonretaliatory reason for non-renewing DeBose's appointment as the USFBOT Registrar. More specifically, after an on-site evaluation of the Registrar's Office, including a face-to-face interview with DeBose, Ellucian made an official report to USFBOT that the office led by DeBose lacked collaboration and a willingness to embrace change, and posed a risk to the success of DegreeWorks.  Indeed, the jury's finding on Count I—i.e., that USFBOT would have terminated DeBose notwithstanding any racial animus—conclusively demonstrates that USFBOT articulated a legitimate, non-retaliatory reason for DeBose's termination.

DeBose therefore had the burden of establishing, through significantly probative evidence, that USFBOT's reason for terminating her was a pretext for retaliation. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).  DeBose failed to meet her burden.

In denying USFBOT's request for summary judgment on DeBose's retaliation claims, this Court cited to DeBose's averments that she was "asked into meetings with no agenda" and to DeBose's claim that the Alexis Mootoo incident was part of a deal in which Dosal promised Mootoo more favorable pay and position.  [Doc. 210, p. 20]. This Court concluded:

> DeBose's version of the facts, i.e. that she was the victim of a massive conspiracy because she filed complaints of discrimination, may not ultimately be accepted by a jury, but there is certainly enough circumstantial evidence of retaliation to afford DeBose her day in

*TPA 512468392v2*

> Court.   Specifically, given the close temporal proximity between
> DeBose's EEOC complaint and USFBOT's decision to engage
> Ellucian, DeBose's testimony that the Registrar's Office was included
> in the scope of Ellucian's engagement at the request of USFBOT,
> DeBose's testimony that she was treated differently following her
> complaints of discrimination, and the timing of circumstances
> surrounding the Traynham conversation, a reasonable jury could find
> that USFBOT's actions were retaliatory.

[Doc. 210, pp. 20-21].

However, at trial, DeBose presented a considerably weaker case.  In fact, *none* of the evidence that enabled DeBose to evade summary judgment on her retaliation claim was introduced at trial.

The undisputed trial testimony was that Provost Wilcox made the decision to terminate DeBose and that Paul Dosal was not involved in that decision. [Trial Transcript, Day 4: pp. 55-57].   There was *no* evidence introduced that the decisionmaker, Wilcox, ever asked DeBose into a meeting with no agenda. Furthermore, both Alexis Mootoo and Dosal testified without contradiction that the Mootoo incident was *not* part of a deal in which Dosal promised Mootoo more favorable pay and position, and there was no evidence presented to the contrary. [Trial Transcript, Day 3: p. 192, lines 7-11; Day 8: p. 109, lines 6-9].

Moreover, the evidence at trial did not support a finding of a close temporal proximity between DeBose's EEOC complaint and USFBOT's decision to engage Ellucian.   To the contrary, the uncontradicted testimony of Carrie Garcia and Defendant's Exhibit No. 39 proved that the request for funding the Ellucian post-implementation assessment was made in September or October of 2014, *months before* DeBose filed her EEOC charge in December of 2014. [Trial Transcript, Day 9:

pp. 52-53, lines 16-25, 1-16].    Moreover, there simply was no credible evidence that USFBOT could have anticipated at that time that the Ellucian Report would contain the statements about DeBose that it ultimately did.

Similarly, the trial evidence did not support an inference that the Registrar's Office was included in the scope of Ellucian's engagement at the request of USFBOT. To the contrary, the uncontradicted testimony of Carrie Garcia and Defendant's Exhibit No. 71 demonstrated that it was the Ellucian consultant, Andrea Diamond, who proposed that the Registrar's Office be included in her interview schedule. [Trial Transcript, Day 9: p. 55, lines 12-23].

Turning to "the time of circumstances surrounding the Traynham conversation," the uncontradicted trial testimony was that UNF Provost Traynham contacted Wilcox inquiring about DeBose, not vice versa. [Trial Transcript, Day 7: pp. 38-39, lines 20-25, 1-8].    Moreover, Wilcox testified without contradiction that he told Traynham nothing different than what appeared in the Ellucian Report.  While the jury may have considered Wilcox's statements to Traynham unkind, or even harsh, the trial evidence regarding that conversation does not logically support an inference that Wilcox's reason for non-renewing DeBose's employment was merely a pretext.  *See Blackstone v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) ("an inference based on speculation and conjecture is not reasonable"); *see also Landry v. Lincare, Inc.,* 579 Fed. Appx. 734, 738 (11th Cir. 2014); *Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 785, 791 n.15 (11th Cir. 1992).

12

Nor was fact that the Ellucian Report identified two other areas of risk for DegreeWorks sufficient to satisfy DeBose's burden of proving pretext. Courts require that "the quantity and quality of the comparators' misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Burke-Fowler v. Orange County, Fla.,* 447 F.3d 1319, 1323 (11th Cir. 2006), *citing Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir. 1984).

DeBose failed to show that her circumstances were "nearly identical" to that of Carrie Garcia and Travis Thompson, who were responsible for the other two areas of Risk identified in the Ellucian Report. In the first place, less than a year earlier - - - and before she engaged in any protected activity - - - DeBose had been stripped of the responsibility for managing DegreeWorks because of complaints about her lack of collaboration. [Trial Transcript, Day 4: p. 11, lines 13-18]. The same was not true of Garcia or Thompson.

More importantly, the nature and severity of the concerns raised about DeBose in the Ellucian Report were materially different than the concerns raised about Garcia and Thompson. In the first place, the Report directly referenced the Registrar's Office's lack of cooperation during the consultant's interview; no such criticism was made regarding Carrie Garcia or Travis Thompson. [Def. Ex. No. 108]. Moreover, as Wilcox explained in his testimony, the other two areas of risk identified in the Report had nothing to do with lack of collaboration or unwillingness to embrace change, but were technical IT issues that could be readily addressed through cross-training or by

putting controls in place to limit access.  [Trial Transcript, Day 6:  p. 151-54, lines 16-25; 1-3; Day 8: pp. 27-28, lines 7-25; 1-25].

Rather than proving that Wilcox's testimony that the decision to terminate DeBose was based on the Ellucian Report was "a lie" or "a phony reason," DeBose chose instead to attack the wisdom of USFBOT's actions and its alleged failure to afford her due process.  In so doing, DeBose "confuse[d] *disagreement* about the wisdom of an employer's reasons with *disbelief* about the existence of that reason and its application in the circumstances."  *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997) (emphasis in original).  While reasonable people could disagree about whether USFBOT should have terminated DeBose on account of the Ellucian Report, or whether it should have followed a different process to do so, "such potential disagreement does not, without more, create a basis to *disbelieve* an employer's explanation. . . ."  *Id.*  (Emphasis in original).

In short, DeBose has presented *no evidence* --- as opposed to mere speculation and argument --- that Wilcox's stated reason for DeBose's termination was a mere pretext for retaliation.  Therefore, judgment as a matter of law should be entered for USFBOT.  *See Combs v. Plantation Patterns, supra* at 1543 (reversing denial of motion for judgment as a matter of law because plaintiff failed to present sufficient evidence of pretext); *Walker v. NationsBank of Florida, N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995) (affirming judgment as a matter of law where plaintiff failed to present a jury question or pretext).  Alternatively, because the verdict is against the clear weight of the evidence, a new trial should be ordered.

14

**C.      DeBose Should Not Have Been Allowed To Re-Open Her Case And Offer Previously-Undisclosed Damages Evidence**

DeBose had the burden of establishing her damages. *Akouri v. Fla. Dept. of Transportation,* 408 F.3d 1338 (11th Cir. 2005); *Szeinbach v. Ohio State University,* 820 F.3d 814 (6th Cir. 2016) (a Title VII plaintiff is required to establish the appropriate amount of back pay with reasonable certainty.  If the plaintiff fails to offer such proof, then an award of back pay is not warranted).

After USFBOT presented its Rule 50(a) motion on the issue of damages, the Court *sua sponte* granted DeBose leave to reopen her case in chief to testify about damages.  [Doc. 462].  USFBOT objected to the re-opening of DeBose's case in chief, but that objection was overruled.  [Trial Transcript, Day 9: p. 95].  While this Court had the discretion to allow DeBose to reopen her case in chief, USFBOT respectfully submits that, under the circumstances of this case, it constituted an abuse of discretion to do so.

Where, as here, the failure to offer evidence is attributable to the negligence or carelessness of a party's attorney, it is an abuse of discretion to reopen a case to consider the evidence. *Downey v. Dentar County, Texas,* 119 F.3d 381, 387 (5th Cir. 1997); *see also Wilson v. Good Humor Corp.,* 757 F.2d 1293, 1300 (D.C. Cir. 1985) ("a plaintiff's failure to call available witnesses or produce existing documents does not ordinarily constitute grounds to reopen a case"); *Guthright v. St. Louis Teacher's Credit Union,* 97 F.3d 266, 268 (8th Cir. 1996) (same).

TPA 512468392v2

Here, DeBose's failure to present damages during her case in chief cannot be excused as mere negligence or carelessness on the part of DeBose.  Instead, it was a direct result of DeBose directly flouting the time limitations set for the trial and ignoring this Court's repeated cautions to her about the time she was using in presenting her case in chief.  After informing the Court that she needed 20 hours to present her case, [Doc. 355, pp. 10-11], DeBose spent almost twice that, the better part of eight trial days, questioning two adverse witnesses, Wilcox and Dosal.  Then, despite the Court repeatedly suggesting to DeBose that she would be wise to use her remaining trial time by taking the stand, DeBose rested her case-in-chief without taking the witness stand or introducing any damages evidence. [Trial Transcript, Day 8: p. 115, lines 3-8; pp. 125-127].   Therefore, DeBose should not have been permitted to re-open her case-in-chief to offer damages evidence.

Moreover, once her case in chief was reopened, DeBose was permitted to present damages evidence to the jury that was never previously disclosed to USFBOT.  In her Rule 26 disclosures,[5] DeBose did not provide any computations for

---

[5] Rule 26(a)(1)(A)(iii) provides, in relevant part:  "[A] party must, without awaiting a discovery request, provide the other parties . . . a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying under Rule 34 the documents or other evidential material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered. . . ."  Rule 37(c) provides, in relevant part, that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.  Rule 37(c)(1).  "Substantial justification exists if there is "justification to a degree that could satisfy a reasonable person that parties differ as to whether the party was required to comply with the disclosure request." *Cinclips, LLC v. Z. Keepers, LLC*, 2017 WL 2869532 (M.D. Fla. July 5, 2017) (*citing Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 682 (M.D. Fla. 2010)).

16

backpay damages or benefits and did not serve any documents supporting such computations.  [Doc. 354-1].

Similarly, notwithstanding the express requirement of Local Rule 3.06(c)(7)[6], DeBose did not provide any statement of the amount of back pay or benefits she was seeking in the parties' joint pretrial statement.  In fact, DeBose's statement of damages in the parties' joint pretrial stipulation did not even make reference to lost benefits. [Doc. 361, p. 22].  *See Mock v. Bell Helicopter Textron, Inc.,* 2007 WL 2774230 (M.D. Fla. Sept. 24, 2007) (excluding loss retirement benefits not included as a category of damages in the pretrial statement).

Allowing DeBose to re-open her case and present previously–undisclosed damages evidence caused substantial prejudice to USFBOT.

Notwithstanding USFBOT's motion in limine—Docs. 332, 412—DeBose was permitted to testify in a narrative fashion that: (1) she had to replace her vehicle because of three years of driving to her subsequent employer;[7] (2) she had to pay $4,172 per month for COBRA coverage for a family plan and lost an estimated 1,000

---

[6] Local Rule 3.06(c)(7) requires any party seeking money damages to provide a statement of the elements of each such claim and the amount being sought with respect to each such element "within the pretrial statement."  Local Rule 3.06(e) further provides that "[t]he pretrial statement . . . control[s] the course of the trial and may not be amended except by order of the Court in the furtherance of justice."  *See also G.I.C. Corp. v. United States,* 121 F.3d 1447, 1450 (11th Cir. 1997) ("parties are bound by their stipulations that a pretrial stipulation frames the issues for trial"); *Rockwell International Corp. v. United States,* 549 U.S. 457, 474, 127 S.Ct. 1397, 167 L. Ed. 2d 190 (2007) ("claims issues, defenses, or theories of damages not included in the pretrial order are waived even if they appeared in the complaint").

[7] *See United States v. Burke,* 504 U.S. 229, 239, 112 S.Ct. 1867, 119 L. Ed. 2d (1992) (noting that the damages available under Title VII do not include consequential damages).

hours in accrued USF sick and vacation leave benefits; [8]   (3) her benefits at Florida Polytechnic University had to be paid out of her salary and were not matched by her employer; (4) any time that Florida Polytechnic was closed, she received no pay; and (5) based upon her summary, her lost benefits were approximately $187,000, despite the fact that she claimed lost salary in the amount of $118,000. [9]   [Trial Transcript, Day 9: pp. 103-13].  In addition, over USFBOT's objection, DeBose was permitted to provide this testimony using a damages summary that she had prepared the night before.  [Trial Transcript, Day 9: p. 110].  Importantly, DeBose's damage summary was never produced to USFBOT and DeBose never provided any underlying documents that would serve as a basis for it.

All of this testimony came as a complete surprise to USFBOT, not only the components of DeBose's claimed benefit losses, but also the damages figures and the basis for damages figures.  Moreover, DeBose's testimony about her total lost benefits included components that either were not legally permissible or were the subject of the Court's prior rulings.  Despite that fact, those components and amounts found their way into the verdict.

An award of back pay is designed to make a plaintiff whole, not to give the plaintiff a windfall or to punish the employer.  *Joseph v. Publix Markets, Inc.,* 151 Fed. Appx. 760, 769-70 (11th Cir. 2001) (*citing Franks v. Bowman Trans. Co.,* 424 U.S. 747, 763-66 (1976).  Moreover, "[t]he concept of trial by ambush has long ago fallen

---

[8] DeBose's breach of contract claim seeking these damages was dismissed by the Court.

[9] Normally, total benefits account for 30% of salary.  U.S. Department of Labor, December 2008, *Employer Costs for Employee Compensation.*

into desuetude in both state and federal courts." *Bostick v. State Farm Mutual Automobile Insurance Co.,* 2017 WL 4518665, at *1 (M.D. Fla. Oct. 10, 2017) (internal citation omitted).

Under Rule 59, a court is required to grant a new trial if the verdict, if sustained, will result in a miscarriage of justice. *George v. GTE Directories, supra.* The circumstances of DeBose's damages evidence was prejudicial to USFBOT and inconsistent with fairness and due process. Therefore, a new trial should be granted on DeBose's entitlement to back pay and benefits.

## CONCLUSION

For the foregoing reasons, judgment as a matter of law should be entered for USFBOT. Alternatively, because the verdict is against the clear weight of the evidence, a new trial should be ordered.

Respectfully submitted,

/s/ Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
Cayla McCrea Page
Florida Bar No. 1003487
Email: pagec@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard, Suite 1900
Tampa, FL  33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
Attorneys for Defendant
University of South Florida Board of
Trustees

*TPA 512468392v2*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 3.01(g)**

Pursuant to Local Rule 3.01(g), the undersigned attorney hereby certifies that he attempted to confer with plaintiff to conciliate the instant motion, but such attempt was unsuccessful.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 29, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to:

Angela DeBose, Pro Se
1107 W. Kirby Street
Tampa, FL  33604

Jeffrey B. Jones, Esquire
Kimberly J. Doud, Esquire
Nancy A. Byer, Esquire
Littler Mendelson, P.C.
111 North Magnolia Avenue, Suite 1250
Orlando, FL  32801

/s/ Richard C. McCrea, Jr.
Attorney

TPA 512468392v2